RECEIVED

DEC 2 8 2023

CLERK, U.S DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY _____
       DEPUTY

Attachment 1 - Civil Complaint

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
_____ DIVISION

Olivia Bays
_____
(Enter your full name)
      Plaintiff(s)

CASE NUMBER: SA23CA1566OG
_____
(Supplied by Clerk's Office)

New Braunfels Police Department/ City of New Braunfels
_____
(Enter full name of each Defendant)
      Defendant(s)

## COMPLAINT

First Paragraph (Name and Address of Plaintiff) Olivia Bays  6161 El Cajon Blvd , #805, San Diego, CA. 92115

Second Paragraph (Name and Address(es) of Defendant(s)) New Braunfels Police Dept.
City of New Braunfels
550 Landa St.
New Braunfels, TX 78130

Third Paragraph (Jurisdiction Plea) District of Texas. Defendant in all incidents, events occurred in Guadalupe county, Texas.

Fourth Paragraph (Allegation 1) Civil rights violation section 1983 See attached brief

Fifth Paragraph (Allegation 2) ... Refer to attached brief for filing

The final paragraph should contain a statement of the relief you are seeking. This paragraph should not be numbered.

Punitive damages for physical injuries, emotional distress, as described in the enclosed brief

_____
Signature
Name (Typed or Printed)    Olivia Bays
Address                    6161 El Cajon Blvd 805
Telephone Number           San Diego CA 92115
                           619-886-7315

27

Rev. Ed. October 26, 2017

**OLIVIA BAYS.**
 **Plaintiff,**

VS.

**CITY OF NEW BRAUNFELS, TEXAS**
**DETECTIVE CHRISTOPHER DIAZ**
**BRAUNFELS, TEXAS CHIEF OF POLICE KEITH LANE**
**NEW BRAUNFELS. TEXAS ASSISTANT CHIEF JOE VARGAS**
**OFFICER JOEL HAWK**
**OFFICER TIMOTHY SHAFFER**
**Defendants**


CIVIL ACTION NO.


## UNITED STATES DISTRICT COURT WESTERN DISTRICT OF TEXAS SAN ANTONIO DIVISION


## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND


TO THE HONORABLE JUDGE OF SAID COURT:
NOW COMES, OLIVIA BAYS, Plaintiff complaining of City of New Braunfels, Texas, Detective Christopher Diaz. New Braunfels, Texas Police, assistant, chief Joe Vargas Officer Joel Hawk and Officer Timothy Shaffer, New Braunfels, Texas Chief of Police Keith Lane, referred to collectively as Defendants, and for cause of action would show the Court the following:


I. PARTIES

1. Plaintiff, Olivia Bays(hereinafter referred to as "Plaintiff" or "Bays"), is an individual residing in New Braunfels, Guadalupe County, Texas and was a resident of
New Braunfels at the time of the incidents made the basis of this suit.

2. Defendant, City of New Braunfels, Texas (hereinafter referred to as "New Braunfels"), is, and at all relevant times was, a municipality incorporated under the laws of the State of Texas and may be served with process by serving the New Braunfels City Manager, Robert Camareno, at his place of business, 550 Landa Street, New Braunfels, Texas 78130.

## II. JURISDICTION AND VENUE

3. Plaintiff Bays was subjected to wrongful arrest, and illegal search and seizure in violation of her rights guaranteed to her by the Fourth Amendment of the United States Constitution, and applied to States pursuant to the Fourteenth Amendment of the United States Constitution.

4. 42 U.S.C. §1983 and 42 U.S.C. §1988 provide jurisdiction over Plaintiff's constitutional claims for redress, which are conferred on this Court by 28 U.S.C. §1343(a)(3).

5. . Federal question jurisdiction is conferred on this Court by 28 U.S.C. §1331, because this action arises under the Constitution and laws of the United States.

6.. Venue is proper in the Western District of Texas, San Antonio Division, as this is the district where the claim arose in accordance with 28 U.S.C. § 1391(b).

## INTRODUCTION

7. Defendant Diaz initial contact with Plaintiff Bays began on October 27, 2022 as plaintiff Bays reported hate crimes being committed against her. The suspects identified as Emily Flavin and Cody Weaver, individuals, residing adjacent to the plaintiff. Flavin and weavers address of 318 Saiga Dr. new Braunfels, Texas.

8. Defendant Diaz identified himself as the investigating detective reference these crimes. Emails and correspondence, retained by the plaintiff, show a complete disregard for the laws that have been violated, we're plaintiff Bays have been repeatedly, victimized, harassed, stalked and threatened.

9. Plaintiff Bays in written correspondence, made it known to defendant Diaz that due to the violations of policy, procedure, state, and federal laws displayed during the course of their exchange, plaintiff Bays will be filing federal complaints on Diaz for violations of color of law. All written correspondence that has been retained for this case.

10. Defendant Diaz maliciously, pursued the plaintiff, where he began to harass and stalk the plaintiff. Diaz sent officers to sit outside of the plantiffs home, while allowing the hate crimes that were being committed against her to continue and worsen.

11. On the evening of November 14, 2022, defendant Diaz sent multiple officers to sit outside of the planes home.

12. Officer Joe hawk of the new Braunfels Police Department was one of the officers cowardly "hiding" in the plaintiffs neighborhood, waiting for notification that the plaintiff had left her home.

13. Officer Joel Hawk initiated an unlawful traffic stop on the plaintiffs vehicle, a white Jeep Wrangler. Maliciously and deliberately stopping the vehicle without cause.

14. Defendant, Joel hawk stated, while wearing a body worn camera that he stopped the plaintiffs vehicle because her license plate was "dirty." There was not a single speck of dust on the plaintiffs vehicle, or her license plate. Defendant Joe hawk was directly behind the plaintiffs vehicle for no more than two seconds before turning on his emergency lights and initiating a traffic stop. He had not ran the plaintiffs license plate, but chose to make an unlawful traffic stop by stating that the license plate on the vehicle was dirty, when there wasn't a speck of dust present on the plate itself.

15. The plaintiff pointed out to Officer Hawk that there was no dirt or obstructions on her license plate. Even pointing directly at the license plate for him to look at it. It was at that time, and also recorded on body worn camera, that Joel hawk stated that there was now a "glare" on the license plate, which is a Plaintiff was stopped for. Joel hawk conducted an unlawful traffic stop and immediately detained the plaintiff in handcuffs, without even identifying her. The body camera footage will show there was no glare on the license plate.

16. The plaintiff had not been identified, but was immediately placed in handcuffs The defendant, Joel hawk failed to mirandize the plaintiff after being detained. Joel hawk would have been in capable of determining who the driver was, whether male or female, due to the fact that the lighting conditions or low, and the stop was initiated after sunset, and during dark conditions. The plaintiff had no previous interactions with this officer to where he would've been able to identify her based upon prior incident.

17. After detaining, the plaintiff, assisting officers began to approach the plaintiffs vehicle, opening up the vehicles doors. Prior to officers opening the doors, this was a closed vehicle belonging to plaintiff Bays. The plaintiff can be heard on the recordings from the body cameras, worn by the officers that officers did not have consent to search for vehicle. They continue to open up the doors and rummage through the vehicle and close containers without a warrant. Their search was outside the scope of what would be in vehicle inventory.

18. Officers disregarded the statement made by the plaintiff and continue to rummage through her vehicle, opening closed containers without a warrant or probable cause.

19. Subsequently, Officer Joel hawk transported the plaintive to the Guadalupe county adult detention center without even confirming her identity.

20. The white Jeep Wrangler, owned and operated by the plaintiff, was towed from the scene. Prior to towing the vehicle, and intrusive search was conducted on the vehicle. Closed

containers were opened without a warrant, and without expressed consent from the owner, plaintiff, Bays.

21. The officers who conducted the unlawful and intrusive search of the plaintiffs vehicle, ripped up interior carpet, pulled up the center consul, causing damage. They also open closed and sealed containers and searched closed bags. And containers without a warrant. They were scratches and gouges all over the console and interior of this pristine vehicle.

22. This was an unlawful traffic stop conducted by defendant Joel Hawk. His actions were malicious and deliberate, and we're based on a direct order given to him by defendant, detective Christopher Diaz recordings from the camera inside of Joe Hawkes, police vehicle, and recordings from his body worn camera will show that he was deliberately hiding in the neighborhood where the plaintiff resided. He was ordered to wait for the Plaintiff to leave and stop her vehicle without cause. His actions were deliberate, malicious, and unlawful. This unlawful detention violated the plaintiffs fourth amendment right to search and seizure

23. The intrusive and destructive search conducted on the plaintiffs vehicle also constitute as a violation to the fourth amendment. Extensive damage was noted to the center consul to the plaintiffs vehicle, as well as carpet being torn, and removed from the interior of the vehicle.

24. Personal items which included medication's, personal documents, which includes the plaintiffs last willand testament, which was in a sealed envelope, or opened without a warrant. Personal effects, including prescription medication's were also taken from the vehicle.

25. A prescription bottle of hydrocodone in the plaintiffs name was taken from the vehicle and not returned. Additional personal effects, purchased items, documents, were taken from the vehicle, and not returned to the Plaintiff. The plaintiff is prescribed this medication by a licensed physician for chronic pain associated with a failed, spinal fusion and multiple orthopedic concerns personal items, and affects were also taken and not returned

26. The plaintiff was transported to the Guadalupe county detention center, where she was a Unlawfully detained for 27 days. During that time, the plaintiff was in medical distress, there is evidence of stroke and heart attack that occur during that time. The plaintiff was deprived of a constitutional rights, with deprived legal representation. Was held without bond, or a court date, and her rights as an American with disabilities were repeatedly revoked and violated.

27. After being unlawfully detained in the Guadalupe County detention center for over seven days, defendant, Christopher Diaz arrived at the adult detention center, and demanded an interview with the plaintiff.

28. The plaintiff was shackled from her legs to her hands in chains. She was ordered to walk down the hallway, shackled to appear in person to participate in an interview initiated by defendant, Christopher Diaz.

29. The plaintiff has had six spine surgeries and a failed spinal fusion. Being shackled from her feet to her hands and chains caused unnecessary pain, and suffering to the plaintive. While walking down the hallway, the plaintiff had to stop multiple times, and began crying in pain. After stating to the corrections officers that she could not walk any further in the shackles, she was ordered and threaten that she had to proceed.

30. Plaintiff Bays made it known that she had no intentions of speaking to Detective Diaz and did not want to participate in the interview. She was forced into an office with Detective Diaz and a sheriffs department deputy whose identity at this time it's been verified

31. The plaintiff was mirandized by the defendant, Christopher Diaz. Immediately, the plaintiff stated that she did not wish to speak to Detective Diaz. At that time, the interview should have stopped. No further questions should have been asked, no additional comments, or a marks should have been made by detective Diaz.

32. The defendant, Christopher Diaz, continued the interview, making comments, trying to coerce the plaintiff into speaking after she had made it known, she did not wish to speak to him. Diaz failed to stop the interview and allow the plaintiff to return to her holding cell. He continue to harass and provoke the plaintiff for several minutes after she stated that she did not wish to speak to the defendant.

33. In this recorded, an unlawful interview, the Plaintiff, "Bays" inquired to defendant Deas if he would be investigating the incident and hate crimes committed against her, where the suspects had been identified as her neighbors, Emily, Flavin, and Cody Weaver. Diaz stated no, and refused to investigate hate crimes, committed against the plaintiff, which included; harassment, violent, threats, vandalism, theft, torturing of an animal, false reporting. Daily narcotics complaints were also filed with the new Braunfels Police Department, where the suspect, Emily Flavin was recorded on a daily basis, smoking narcotics and public view and in front of children.

## III. FACTS

34. On December 23, 2022 at approximately 4:30 PM Defendant detective, Christopher Diaz,, acting in his official capacity as an officer of the New Braunfels Police Department ("NBPD"), targeted and pursued Plaintiff Bays in New Braunfels, Texas. Defendant Diaz initiated a false arrest by presenting to the court information regarding a criminal case and requesting that a warrant be filed for the plaintiffs arrest under false pretenses.

35. Defendant Diaz committed perjury in his affidavit to the court. In his affidavit, he alleged that plaintiff Bays had committed the act of forgery, a felony offense in the state of Texas.

36. Under false pretenses, and after committing the act of perjury, detective Deas coerced an honorable judge with Guadalupe county to issue a warrant for the plaintiffs arrest.

37. On December 23, 2022 at approximately 4:30 PM, the plaintiff was alarmed after officers arrived at her residence. Officers claimed that they were dispatched to the residence on what was yet another false report from the suspects at 318 Saiga Dr.

38. The suspects who had committed multiple hate crimes against the plaintiff, filed a false report, stating that the plaintiff was yelling and screaming in her yard, using vulgarity's and making threats. There is surveillance footage, showing that prior to officers arriving, the plaintiff was in her backyard, tending to her mowing and conducting landscaping work. At no time is the plaintive seen, heard, or noted as yelling, screaming, or making any sort of violent or threatening gestures to anyone. This video is retained as evidence in the case

39. The two responding officers from the new Braunfels Police Department immediately took the plaintiff into custody, handcuffing her behind her back. The officers did not explain what was happening, but made threats to charge her with additional charges of resisting. There is camera footage showing that at no time did the plaintiff resist officers, but expressed fear and confusion on what was happening

40. Camera footage shows that officers placed the plaintiff under arrest, handcuffing her with her hands behind her back. The plaintiff expressed that she was in pain and needed her medication's. The officers refused to allow the plaintive to take her medication's.

41. The plaintiff requested from officers that she be allowed to obtain clothing because she was cold, and the officers refused. The plaintiff also expressed that she had multiple medical issues and needed her medication's prior to being transported. The officers refused. The officers failed to provide reasonable accommodation and provide the plaintiff with necessary medication's after she made it known that she was disabled and needed these medication's for chronic pain. These officers knowingly and intentionally deprived a disabled American with reasonable accommodation and prescribed medication's, violating the Americans with disabilities act. The plaintiff was handcuffed and was not a threat to these officers, she was compliant with their orders. They could've very easily escorted her to her inside of her home to obtain her medication's. One of the officers went inside of the plaintiffs home to retrieve her shoes, as she was barefoot at the time of this unlawful arrest. I.

42. The plaintiff was arrested, handcuffed with her hands behind her back and walked to a new Braunfels Police Department patrol vehicle in the presence of her neighbors. As neighbors to buy watching, the plaintiff was publicly, humiliated after she was taken into custody under false pretenses

43. And body camera recordings, the plaintive can be heard telling the officer to please take her away from the neighborhood because she was embarrassed, and her neighbors were watching. Prior to this incident, there is a video recording of the plaintiffs neighbors playing the song "bad boys"

Where there is also a verbal recording of suspect, Emily Flavin screaming "let's get you back where you belong  Olivia." " you belong in jail."

44. The new Braunfels Police Department not only failed to act were multiple hate crimes has been reported, but they knowingly and intentionally encouraged and participated in these crimes. There is evidence to support that Christopher Diaz did, in fact, encourage in, assisted the suspects in their hate crimes. This evidence will be presented during the course of this case, with discovery and presented during trial to a jury

45. Evidence will show that detective Christopher Diaz not only failed, but refused to investigate, and properly report hate crimes that have been committed. These hate crimes were committed against the plaintiff for being a faithful Christian. On recorded surveillance, the suspects can be seen vandalizing. Plaintiff Bays' home, stealing a garden flag with a picture of Jesus Christ on it, taking a knife and literally slashing the blinds on her back porch. All of this information and videos were presented to Christopher Diaz, and it was reported by the plaintiff as hate crimes. The plaintive had been deliberately targeted based upon her religion.

46 There is also evidence against the suspects that shows them poisoning the plaintiffs family pet. These videos also show the suspects making threats and attempting to coerce her cat under their property to place him in the crate and kill him. There are over 150 videos of evidence that detective Christopher Diaz has deliberately disregarded. Knowingly, and intentionally ignoring hate crimes being committed in the city of new Braunfels and in a residential neighborhood, where families and children are present.

47.  The plaintiff, well handcuffed with her hands behind her back and seated in the back of the patrol vehicle, was transported to the new Braunfels Police Department. The officer allegedly obtained a copy of the warrant from dispatch, that refused to show it to the Plaintiff when she asked

48. At no time was the plaintiff presented with a copy of the warrant to observe the charges, the probable cause, and the information associated with it

49. The plaintiff was transported to the Guadalupe county detention center where she remained until the late afternoon of Christmas Eve, December 24, 2022.

49. The plaintiff was held on felony charges of forgery with a $20,000 bond.

50. While wrongfully and unlawfully detained, the plaintiff experienced a medical emergency, given the fact that she did not have her appropriate medication's and was denied access to them prior to being transported to the detention center.

51. While in custody of the Guadalupe County detention Center, the plaintiff began experiencing symptoms of heart attack and stroke.

52. There is record that the plaintiff didn't fact have a previous stroke only weeks prior to and had medication's that were needed for this diagnosis, her medical condition, as well as blood pressure.

53. While in custody, the plaintiff made her medical conditions known and requested to see a nurse immediately. She was denied treatment, medication, and subsequently suffered another stroke while in custody.

54. Other detainees, who are in the same holding cell as the plaintiffs cannon will confirm that they made multiple attempts to obtain staff members, corrections, officers, and medical staff to treat me for the heart attack and stroke symptoms that the plaintiff was experiencing.

55. Rather than providing adequate and reasonable care, the plaintiff was threatened by the staff and nurses within this facility. The nurse who is called to treat the plaintiff threatened to take her to a paided cell if she did not "shut up"

56. The detention center medical records on this case will show that the plaintiff had a blood pressure reading that was well over 200. At no time was the plaintive provided with adequate or reasonable medical care. Although experiencing clear and obvious symptoms of stroke, and a heart attack, this facility failed to transport the plaintiff to a hospital for treatment. They repeatedly violated the Americans with disabilities act as the plaintiff requested reasonable accommodation and medication's. Due to a spinal injury, the plaintive also asked the staff for a mat to sit on opposed to a concrete floor. The corrections officer stated to the Plaintiff "we don't do that here." When responding, "you are in violation of the Americans with disabilities act", the corrections officer stated, " I know."

57. The plaintiff remained in a holding cell until the afternoon hours of Christmas Eve, December 24, 2021. The plaintiff was released after posting, bond, which her elderly parents, who reside in the state of Indiana, had to post. This cost financial burden to the plaintiffs family. As they were paying for extensive medical expenses for her father.

58. After being released after paying the bond of $2000, the plaintiff was released. The plaintiff immediately went to the emergency room to receive treatment for the symptoms of heart attack and stroke.

59. As per the terms of her bond, the plaintiff had to conduct weekly check ins with the bail bondsman who had posted bail on this case. The plaintiff was ordered to remain in the state of Texas, although she was a resident of the state of Indiana. The plaintive was threatened with arrest if she was caught outside of the state due to the terms of her bond.

60. The plaintiff was deprived of being with her family and sick father for nine months. She was denied the opportunity to visit her parents in the state of Indiana, knowing that her father was extremely ill.

61. The plaintiff has paid over $18,000 in legal fees as a result of this unlawful arrest. The plaintiff has also paid thousands of dollars in medical expenses, and follow up care for the symptoms of heart, attack and stroke experienced from this unlawful detainment

62. After her release, the plaintiff continued to experience harassment from the new Braunfels Police Department. There are recordings showing the new Braunfels Police Department, sitting outside of the plaintiffs home in an attempt to harass and threaten.

63. The hate crimes that detective Diaz was actively encouraging and participating in continued. The plaintiffs pet that had been poisoned by her neighbors subsequently died. After multiple attempts by the suspects had made to poison and trap him.

64. The Plaintiff has a number of documented emails and written letters to the city of new Braunfels, it's council members, and the city attorney to take action. No response was ever provided.

65. On April 3, 2022, officer, Timothy Shaffer with a new Braunfels. Police Department responded to a false report from the suspects stating that the plaintiff had vandalized their backyard. This was yet another false report that the new Braunfels Police Department encouraged and participated in. No crime had occurred, yet this was a pattern of multiple false reports that were being submitted by the suspects, in addition to the hate crimes that they were committing against the plaintiff.

66. No crime had occurred, yet Officer Shaffer violated the plaintiffs right to the fourth amendment, by conducting an unlawful search and seizure of her property. Watering your own private property is not a crime.

67. At 12:08 AM on April 3, 2022, officer, Timothy, Shaffer of the new Braunfels Police Department conducted a search of the plaintiffs property that was recorded on surveillance cameras. The plaintiff was witness as Officer Shaffet was observed, searching her property over a 7 foot fence. The plaintiff was alerted to someone peering in her backyard. The plaintive could see movement and someone using a flashlight in her backyard. The plaintive could see the flashlight not only shining through her windows to her home, but throughout her entire backyard and back porch.

68. The plaintive called out to make whoever was in her backyard known. Officer Schaeffer identified himself and stated that he was searching my property on a criminal complaint. A homeowner watering their lawn is not a criminal matter. In a recording, Officer Schffer stated that the plaintiff should've just stayed in her house. This officer insinuated that the plaintiff should stay in her house, and allow herself to be victimized, with unlawful searches, and a corrupt police agency participating in hate crimes that are being committed. The defendant skilled an 7 foot privacy fence in order to conduct his unlawful search the plaintiffs property.

69. As harassment, threats, and violent acts committed against the plaintiffs pet we're committed, she had to contact emergency services and call 911 multiple times. The new Braunfels Police Department refused to provide any and all services to the Plaintiff. It was Officer Timothy Schaeffer, who refused to respond to a 911 call initiated by the Plaintiff.

79. This 911 phone call was in reference to the suspects, Emily, Flavin, and Codi's. We were making violent threats against her, initiating a confrontation and attempting to coerce and trap her family pet.

89. Had Timothy Schaffer responded to this 911 call and the crimes being committed, as well as a narcotics complaint that was reported, the plaintiffs family pet would likely be alive today. The plaintiffs cat was poisoned that night, where the suspects were identified as Emily, Flavin and Cody Weaver. The same suspects that have been reported over three dozen times for hate crimes. Despite repeated request for investigation, the new Braunfels Police Department has refused to investigate these crimes, the animal, cruelty, and I hate crimes committed. They have refused to accept any evidence, or discuss any of these matters with the plaintive. They have actively encouraged and participated in these crimes with the suspects. There is sufficient evidence that will be presented to the courts and during trial to expose the magnitude of the corruption that has taken place in this case

81. The city of new Braunfels and the new Braunfels Police Department failed to report hate crimes being committed and allowed for these crimes to continue. The harassment, stalking, threats, and constant living in fear. This fear stemming, from not only the hate crimes being committed against her, the violent threats, but also the harassment, threats, and constant recordings of police officers, sitting outside of her house, attempting to intimidate with their presence.

82. As a result of living in constant fear, the plaintive had no other choice than to place her home on the market. The plaintiff chose to remove herself from the situation, to prevent any further harm, violence to ensue against her, for the threats, harassment, vandalism to stop. The plaintiff was forced out of her own home, because of the fear she not only had of the suspects committing a crime is against her, but the fact that the new Braunfels Police Department was not only encouraging, but participating in these crimes.

83. The plaintiffs home sold the final week of September, 2022. At the time, the plaintiff was still on bond, where the file on her case had not been touched, no charges were filed, and the prosecutor had no intentions of filing charges, or indicting the plaintiff.

84. . After being held on bond for over nine months, a writ for habeas corpus was filed with the plaintiffs attorneys. The court date set on September 26, 2022 released the plaintiff from the terms of this unlawful arrest. The case was immediately dismissed. No charges were ever formally filed, and the plaintiff was never indicted. This case file sat in a folder, collecting dust as the prosecutor refused to file charges.

85. On September 26, 2022, the terms of the plaintiffs Bon were released. Until that date, she was restricted from leaving the state, which meant she was not lawfully permitted to visit her parents in the state of Indiana. Days prior to the habeas corpus ruling, the plaintiff received notification that her father had been hospitalized. The plaintiff was not allowed to leave the state to visit him or to be by his bedside.

86. . After the case had been dismissed, the plaintiff immediately began driving to be by her father's side. Her father passed away hours before she could make it home. The plaintiff had literally crossed the Indiana state line when her father passed away. She was unable to say goodbye, or to be by the side of her father, and best friend. She was only able to hold her father's hand, to be with him, and say goodbye because of this unlawful arrest in the malicious acts of this rogue detective and corrupt police agency.

87. The plaintiff , Olivia Bays, herein pursues causes of action for violation of his Fourth Amendment rights including freedom from police use of unreasonable search and seizure. Based
on information and belief, Defendants' unlawful actions, which constituted multiple violations of Bays" constitutional rights (including, but not limited to, Defendants' detained, and after an unlawful, traffic, stop ["seizure"], subsequent unlawful public detention of Bays in handcuffs, on a public street, and the ensuing of false criminal charges filed against her.

88. Notwithstanding Guadalupe County's dismissal of the spurious criminal charges filed against Ms Bays, the record of NBPD's unlawful arrest against Bays remains accessible to the public, causing further distress, embarrassment, and public humiliation.

89. Based on information and belief, Ms Bays continues to have an experience symptoms and medical current concerns regarding stroke and heart attack  as a direct result of Defendants' unlawful actions. As a further result of Defendants' unlawful actions, Bays has been medically diagnosed with anxiety, and she suffers from extreme sleep loss. He has been prescribed medication for both conditions and suffers significantly in terms of his emotions because of these incidents. Additionally, Ms Bays  suffers from extreme depression, and fear of the police. Note that the plaintiff is an honorably, retired police officer, who has always had the highest regard for law-enforcement officers and up until this incident considered law-enforcement trustworthy and her family.

90. In sum, Defendants' course of conduct prior to, during, and following the relevant events, as detailed herein, resulted in Defendants depriving Ms Bays  of her  constitutional rights, and furthers the risk of Defendants Diaz, Hawk and Shaffer of similarly depriving other free citizens of their constitutional rights.

**IV. CAUSES OF ACTION**

91. The allegations set are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.
26. Section 1983—Generally. Federal law provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.
27. The Fourth Amendment to the United States Constitution guarantees security from unreasonable search and seizure, including the expectation of privacy, and the right to be free from arrests absent probable cause to believe the arrested person committed a crime. Accordingly, Plaintiff alleges that Defendants subjected her to unreasonable search and seizure, violated her expectation of privacy, detained her without reasonable suspicion and/or probable cause, subjected her to physical abuse and unreasonable search/seizure , and subjected Bays to arrest absent probable cause.

92. As detailed herein, the actions and/or omissions of Defendants invaded Plaintiff's right to be free from violation of his integrity by actions of those charged with upholding the laws of the United States. At all times, Defendants were state actors performing acts against Plaintiff, as detailed herein, under color of state law, which actions by Defendants constituted violations of Plaintiff's clearly established Fourth Amendment rights.

93. Plaintiff therefore pleads that Defendants' actions, as detailed herein, allows Plaintiff to recover from a state actor for violation of his civil rights. Plaintiff hereby seeks recovery, against Defendants, pursuant to 42 U.S.C. § 1983.
In violating of Plaintiff's clearly established Fourth Amendment rights, as detailed herein, Defendants Diaz, Hawk and Shaffer acted unreasonably in light of clearly established law. The unlawfulness of the Defendants behaviors would be apparent to a reasonable officer. Plaintiff therefore pleads that Defendant Diaz, Hawk and Shaffer was on notice of the unlawfulness of their actions, in light of clearly established law at the time of their acting, and that such actions, perpetrated by Defendants Diaz, Hawk and Shaffer are in violation of Plaintiff's clearly established Fourth Amendment rights, as detailed herein, evidence plain incompetence and/or intentionality on the part of Defendants Diaz, Hawk and Shaffer.

.

.

94. Careful attention to the facts and circumstances of this particular case demonstrate the objective unreasonableness of Defendants Diaz, Hawk and Shaffefs action against Plaintiff, which is further evidenced by the physical and psychological injuries sustained by Plaintiff as a direct result of the Defendants malicious actions. Defendant Hawk did not act in response to an objective perception that Plaintiff had committed a crime of such severity that justified approaching Plaintiff. actions evidence plain incompetence and/or knowing violation of the law. Defendant Hawk immediately handcuffed and detained the plaintiff without Miranda. The plaintiff, did not pose an immediate threat to the safety of Defendant Hawk or others. The

Playten had not been identified until after she arrived at the Guadalupe County detention center. This is after being detained, handcuffed, placed in the back of a police vehicle, deprived of her rights and transported to the Guadalupe County Jail. This is after an unlawful search has been conducted on a closed vehicle by the new Braunfels Police Department. And after being ridiculed and harassed by officer, Joel hawk. Inappropriate comments made such as "I hope you like Ramen noodles. You'll be eating a lot of those here" making an appropriate in Harassing Commons after arriving at the Guadalupe county detention center from his unlawful traffic stop

95. Section 1983—Unreasonable Search and Seizure. Traffic stops are considered seizures within the meaning of the Fourth Amendment of the United States Constitution, which Amendment protects individuals from unreasonable searches and seizures. When viewed in light of the totality of the circumstances of this particular case, the "seizure" conducted by Defendans Diaz, Hawk and Shaffer against Plaintiff in the course of the relevant events was clearly unreasonable and deprived Plaintiff of the protection from such unreasonable seizures guaranteed to him by the Fourth Amendment.

96. Defendants Diaz, Hawks actions in seizing and immediately detaining the Plaintiff were unjustified at its inception; they suffered from a clear and objective want of a particularized and objective basis for suspecting legal wrongdoing. Defendant Hawks ill-advised, ungrounded, and/or maliciously unlawful basis for initiating his unconstitutional seizure of Plaintiff—a "dirty license plate"—is unsustainable and taints his actions as unjustified at inception. No officer in Defendant Hawks position during the course of the relevant events would have had an objectively reasonable suspicion that Plaintiff was engaged, or about to engage, in a violation of Tex. Transp. Code § 504.945; therefore, Plaintiff herein alleges that Defendant Hawk had no such objectively reasonable suspicion.
Stating again, that in the low light conditions, officer, hawk could not see, or clearly identify the driver as male or female. He had no prior knowledge, or interactions with the plaintive, therefore was unaware of physical characteristics, or a clear description of the plaintiff. He was acting on the malicious orders of detective Christopher Diaz. He was ordered to sit and wait for the plaintiff to leave her home. Officer hawk did not have a valid reason to stop the plaintiffs vehicle. As in the case, Clarence Crawford Junior v. New Braunfels, Joel hawk used an invalid stop in charge of "the dirty license plate."
.
97. Defendant Hawk objectively unreasonable suspicion as to Plaintiff's "violation" of Tex. Transp. Code § 504.945, which Defendant Meyer claims (per his body-cam video recording) was the basis for initiating the seizure of plaintiff, if true, would constitute a mere regulatory offense, punishable only by fine. Any actions subsequent to Defendant Hawks inception of such stop must have necessarily related in scope to the, at best, trivial circumstances that Defendant Hawk made the basis of his stop of Plaintiff.

98. Rather than act in relation to the scope of such aforementioned circumstances, Defendant Hawk demonstrated a plain incompetence and/or intentionality in violation of Plaintiff's rights.  In

regards to officer, Timothy.Shaffer, he violated the plaintiffs rights to the fourth amendment by knowingly and intentionally searching over a 7 foot privacy fence, deliberately shining a flashlight in and about the plaintiffs home around the hour of 1 AM. This, causing alarm and fear to the plaintiff, as it would to any reasonable person. The plaintiff was told by Officer Shaffer that she was a nag, and that she should have just stayed in her house. Leaving the plaintiff and hostile and dangerous situations after failing to respond after being dispatched to the plaintiffs home on a 911 emergency call and request for immediate assistance. Making the plaintiff feel unsafe in her own home and without protection for the crimes that have been repeatedly committed against her; Including violent threats acts of vandalism and hate. .

99. Defendants Diaz, Hawk and Shaffer are not entitled to immunity because all the actions set forth herein violate the clearly established statutory and constitutional rights of Ms. Bays, of which it would be clear to a reasonable officer that their conduct was unlawful under the circumstances, in light of clearly established law.

100. Section 1983—Municipal Liability. Municipalities are liable under 42 U.S.C.S. § 1983 for constitutional torts visited in compliance with the municipality's policies, practices, customs, usages, and/or procedures. A municipality is liable under 42 U.S.C.S. § 1983 for constitutional deprivations visited pursuant to a municipal practice, custom, and/or usage even though such practice, custom, and/or usage has not received express and/or formal approval through the body's official decision- making channels.

101. Defendant New Braunfels, through its final policy-making authority in matters of law enforcement, adopted, sanctioned, ratified, implemented, and/or had actual or constructive knowledge of a policy, practice, custom, and/or usage of intentionally disregarding the rights of individuals such as Ms Bays regarding violations of color of law, misconduct, hostility, and harassment toward free citizens in New Braunfels, Texas. The dire warnings of profiling by NBPD officers, as passionately discussed in the New Braunfels City Council meeting in January 2015, constitutes constructive notice of such policy, practice, custom, and/or usage. Multiple complaints were filed with the new Braunfels, police department, the city, County Council, and the cities attorney, without response, and or action taken. In this case, it shows that officers have continued to use unlawful means to initiate traffic stops, such as "the dirty license plate," The formal complaint filed against officers, Hawk, Diaz, Schaffer, and the new Braunfels Police Department were ignored and disregarded.

102. Defendants New Braunfels Chief of police and their inadequate supervision and/or inadequate training of NBPD officers constituted deliberate indifference to, and/or tacit authorization of, the violation of rights of free citizens with whom NBPD officers come into contact with, and affirmatively caused and/or was the moving force behind the Defendants' violation of Plaintiff's constitutional rights.

103. Accordingly, Plaintiff herein pleads that Defendants' actions and/or omissions violated Plaintiff's constitutional rights, which rights are guaranteed to Plaintiff by the Constitution and laws of the United States. At relevant times, Defendants were state actors performing these acts

against Plaintiff under the color of state law. Defendants' actions and/or omissions constituted violations of 42 U.S.C. §1983, which allows Plaintiff to recover from a state actor for violation of her civil rights.

104. All causes of action listed above should be incorporated into the allegations concerning violation of Plaintiff's constitutional rights under 42 U.S.C.S. §1983.

## V. DAMAGES

105. As a result of Defendants' conduct, as detailed herein, Plaintiff Bays has suffered, and will continue to suffer in the future from humiliation, embarrassment, and mental anguish. Further, as a proximate result of Defendant's actions as described in this petition, Bays has sustained financial losses resulting from the arrest for which she now sues.

106. Plaintiff Bays, a honorably, retired. Police officer, was attempting to live her life in peace, and as a faithful Christian, she was maliciously, pursued by a rogue and corrupt police detective, identified as Christopher Diaz when she observed violations of color of law, extreme misconduct, and prejudice, her life was literally turned upside down after filing complaints with the department of justice, and making it known to Detective Diaz, that he would be investigated for his crimes
Although the criminal charges against Bays were dropped nine months after the arrest, the arrest still appears on a public records search and is accessible by prospective employers, neighbors, acquaintances and family. The time that the placement should've had to spend with her terminally ill father it's time that she can never get back. The plaintiff never had the opportunity to be by her father side, to hold his hand, or to say goodbye to him due to these unlawful charges, and the malicious acts of these officers.

## VI. EXEMPLARY DAMAGES

107. Defendants' collective acts and/or omissions resulted from that entire want of care which establishes that Defendants' acts or omissions were the result of actual conscious indifference to the rights and welfare of Plaintiff Bays, rather than momentary thoughtlessness, inadvertence, and/or error of judgment.

108. Alternatively, Defendants acted maliciously such that Defendants specifically intended to cause substantial injury to Plaintiff Bays, and/or acted with a flagrant disregard for the rights of Bays and with actual awareness that their acts or omissions involved an extreme degree of risk that the acts and omissions would result in the harm claimed by Bays.
.
109. In conjunction with all of the foregoing, and otherwise intentionally and with deliberate or

conscious indifference to the safety and well-being of free citizens, such as Plaintiff, the City of New Braunfels adopted or maintained, through its final policymakers, unconstitutional policies and customs and failed to implement constitutional and proper policies and procedures. These actions proximately caused or resulted in the violation of the constitutional rights of Ms Bays, and proximately caused all resulting damages to him.

110. Defendant Diaz, acted willfully, deliberately, maliciously, or with reckless disregard for Ms. Bays' constitutional rights when he maliciously abused his entrusted position of authority in the perpetration of an unlawful detention, arrest, and/or imprisonment of Plaintiff Bays on December 23rd, 2022.

111. Defendant Joel hawk acted willfully, deliberately, maliciously and with reckless disregard for miss base constitutional rights when he maliciously, abused his and trusted position of authority in the perpetration of an unlawful detention, arrest, and or imprisonment of plaintiff, Bays at the direction of Christopher Diaz on November 14, 2022.

112. Defendant Timothy, Schaeffer willfully, deliberately maliciously and recklessly disregarded. Miss Bays constitutional rights when he maliciously, abused his and trusted position of authority in the perpetration of a deliberate and unlawful search of her property on April 3, 2022.

**Accordingly, Bays is entitled to a jury instruction regarding exemplary damages.**

## VII. ATTORNEY FEES

113. Plaintiff Bays has necessarily retained the services of attorneys to represent her in this complex and difficult proceeding and cause of action. Plaintiff has retained the undersigned attorneys to represent her, and pursuant to 42 U.S.C. §1988(b), he is entitled to recover his reasonable and necessary fees incurred for these attorneys, and the reasonable and necessary expenses incurred in the pursuit of this claim at the trial level, the Court of Appeals level if the case is appealed to that Court (including any interlocutory appeal), and in the Supreme Court of the United States, if necessary. As this case proceeds, in all likelihood, I will be retaining legal representation to assume the responsibilities should this matter proceed to trial.

## VIII. JURY DEMAND

114. Plaintiff requests that this case be decided by a jury pursuant to Federal Rules of Civil Procedure 38 and 39.. A jury of the plaintiffs peers will hear this case, and the filing will be made public in order for this type of corruption to be exposed and so that those who have been entrusted to enforce the law, who willingly violated are exposed for the wrongful ask and held accountable.

**WHEREFORE, PREMISES CONSIDERED;**

115. Plaintiff Olivia Bays. respectfully prays that Defendants be cited to appear and answer herein and upon final trial, recover
from and 1. 2.
3. 4. 5. 6.
against Defendants jointly and severally for the following:
Actual damages in an amount within the minimum jurisdictional limits of the Court;
Prejudgment and post judgment interest at the maximum rates allowed by law; Exemplary damages;
Attorney's fees;
All costs of suit; and
Such other and further relief to which the Court may deem just.

- The filing packet is postmarked and dated for December 20, 2023. A file is unavailable for pro se filers. The tracking number is retained along with the postmark date and date of delivery for filing.
- Service will be provided to all defendants through a process server after filing.

Respectfully submitted,

Olivia Bays
6161 El Cajon Blvd.805
San Diego, CA 92115
O.bays@protonmail.com
619-886-7315