IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| OLIVIA BAYS, | § | |
| | § | |
| *Plaintiff,* | § | SA-23-CV-01566-OLG |
| | § | |
| vs. | § | |
| | § | |
| NEW BRAUNFELS POLICE | § | |
| DEPARTMENT,  CITY OF NEW | § | |
| BRAUNFELS, TEXAS, DETECTIVE | § | |
| CHRISTOPHER DIAZ, CHIEF OF | § | |
| POLICE KEITH LANE, BRAUNFELS, | § | |
| TEXAS; ASSISTANT CHIEF JOE | § | |
| VARGAS, NEW BRAUNFELS, TEXAS; | | |
| OFFICER JOEL HAWK, OFFICER | | |
| TIMOTHY SHAFFER, OFFICER 2 J. | | |
| DOE, OFFICER JOHN DOE, | | |
| | | |
| *Defendants.* | | |

## REPORT & RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendants' Amended Motion to Dismiss [#29]. All dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#10]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that the Motion [#29] be **GRANTED.**

### I.    Background

This civil rights action arises out of Plaintiff Olivia Bays's interactions with various officers of the New Braunfels Police Department ("NBPD"). Ms. Bays filed this suit alleging that she has faced years of harassment by NBPD officers. The current live pleading is the Second

Amended Complaint [#27], which names nine Defendants—the City of New Braunfels, the New Braunfels Police Department, Detective Christopher Diaz, Officer Joel Hawk, Officer Timothy Schaffer, Chief of Police Keith Lane, Assistant Chief of Police Joe Vargas, and two John Doe officers. Ms. Bays asserts violations of the Americans with Disabilities Act and violations of her Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 for an unlawful traffic stop, false arrest, an illegal search of her car, insufficient medical care, an illegal search of her home, and malicious prosecution.

Defendants filed an initial motion to dismiss pursuant to Rule 12(b)(6) as to Plaintiff's Amended Complaint. The motion was dismissed as moot when Ms. Bays filed her Second Amended Complaint. Ms. Bays has therefore already had one opportunity to address the pleading deficiencies alleged by Defendants. Defendants have filed a second motion to dismiss for failure to state a claim [#29]. The motion argues that NBPD must be dismissed due to its lack of jural existence; that multiple claims are time-barred; that the individual defendants are entitled to qualified immunity; and that Ms. Bays has failed to sufficiently plead the City's municipal liability. Ms. Bays filed a response [#30]. This motion is ripe for the Court's review.

## II.     <u>Legal Standard</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded

must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted). However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570.

Because Plaintiff is a *pro se* litigant, her pleadings are to be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, *pro se* litigants, like all other parties, must follow the Federal Rules of Civil Procedure. *See Chhim*, 836 F.3d at 469 ("We hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, but pro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level.").

### III.   Allegations

The Second Amended Complaint alleges that, beginning in October 2021,[1] Ms. Bays reported multiple hate crimes being committed against her by her neighbors. (Second Am.

---

[1] There appear to be multiple typos in the Second Amended Complaint with regards to the dates in question. The undersigned has corrected the dates based on the allegations in the Second Amended Complaint and on the dates listed on Ms. Bays's Guadalupe County criminal records, which the undersigned has taken judicial notice of as matters of public record. *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996); *Norris v. Heart*

Compl. [#27], ¶ 1.) She claims that NBPD officers showed a "complete disregard" for the crimes allegedly being committed against her and began "harass[ing] and stalk[ing]" her. (Second Am. Compl. [#27], ¶¶ 2, 4.) According to Ms. Bays, Defendant Diaz, who was the "investigating detective" for the hate crimes, "maliciously" sent officers to sit outside her home. (Second Am. Compl. [#27], ¶ 4.)

She pleads that, on November 11, 2021, Defendant Hawk initiated an unlawful traffic stop on her vehicle, which she alleges was "based on a direct order" from Defendant Diaz. (Second Am. Compl. [#27], ¶¶ 5–6, 21.) She argues that Defendant Hawk told her that he pulled her over for a dirty license plate, but Ms. Bays alleges that there "wasn't a speck of dust present" on the plate. (Second Am. Compl. [#27], ¶¶ 8, 15.) She claims that when she pointed this fact out, Defendant Hawk said instead that he pulled her over because of a "glare" on the license plate. (Second Am. Compl. [#27], ¶ 9.) Ms. Bays was handcuffed and arrested. (Second Am. Compl. [#27], ¶¶ 10–11.) Two John Doe officers then searched her car and allegedly caused "[e]xtensive damage" to the vehicle. (Second Am. Compl. [#27], ¶¶ 11, 20–21.)

Ms. Bays was then transported to the Guadalupe County Detention Center. (Second Am. Compl. [#27], ¶ 25.) She pleads that she was "unlawfully detained . . . for 27 days." (Second Am. Compl. [#27], ¶ 25.) While in detention, she claims that she was shackled despite her physical disabilities making the shackles severely painful and that she suffered a stroke and heart attack. (Second Am. Compl. [#27], ¶¶ 25, 28.) She also claims that she was "deprived [of] legal representation" and that, after she was Mirandized and stated that she did not wish to speak with Defendant Diaz, he continued to question her. (Second Am. Compl. [#27], ¶¶ 25, 30.) She was released from jail on December 4, 2021. (Second Am. Compl. [#27], ¶ 25.)

---

*Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

Approximately three weeks later, on December 23, 2021, Ms. Bays alleges that Defendant Diaz "initiated a false arrest" by committing perjury in an affidavit to a Guadalupe County judge, who signed a warrant for her arrest for forgery. (Second Am. Compl. [#27], ¶¶ 33–35.) NBPD officers were sent to her home and arrested her. (Second Am. Compl. [#27], ¶ 36.) She claims that, as she was being taken into custody, the officers denied her multiple requests to bring her mediations used to treat her disabilities. (Second Am. Compl. [#27], ¶¶ 39–40.) She then alleges that, once in detention, she "experienced a medical emergency," including showing symptoms of a heart attack and stroke, because "she did not have her appropriate medication[s]." (Second Am. Compl. [#27], ¶¶ 50–51.) According to the complaint, Ms. Bays requested medical care multiple times, which was not provided despite severely high blood pressure; as a result, she suffered a stroke while in custody. (Second Am. Compl. [#27], ¶¶ 53–56.) Additionally, she states that she requested accommodation for her spinal injury, such as a mat to sit on, which was ignored. (Second Am. Compl. [#27], ¶ 56.)

Ms. Bays was released the following day on bond and immediately went to the emergency room. (Second Am. Compl. [#27], ¶¶ 57–58.) She claims that she has paid over $30,000 in legal fees due to the alleged unlawful arrest and thousands in medical expenses. (Second Am. Compl. [#27], ¶ 61.) Due to her bond conditions, she could not leave Texas to visit her parents in Indiana, including her ill father. (Second Am. Compl. [#27], ¶¶ 59–60.) Moreover, she alleges that after being released on bond, the hate crimes against her continued with no aid from the police; she claims that Defendant Diaz was "actively encouraging and participating" in the hate crimes. (Second Am. Compl. [#27], ¶¶ 62–63.) She states that she complained about this harassment to City officials, who never responded to her. (Second Am. Compl. [#27], ¶ 64.) Ms. Bays further alleges that Chief of Police Keith Lane and Assistant Chief of Police Joe Vargas

"were the policymaker[s] when [she] suffered her injuries" and that, despite being aware of the hate crimes committed against her, they refused to investigate. (Second Am. Compl. [#27], at 17.)

Subsequently, in April 2022, Ms. Bays alleges that Defendant Schaffer, an officer with the New Braunfels Police Department, arrived at her home after a false report of vandalism was made by her neighbors. (Second Am. Compl. [#27], ¶ 65.) She claims that Defendant Schaffer, without a search warrant, accused her of vandalism and then conducted a search of her property. (Second Am. Compl. [#27], ¶ 66; *id.* at 18.) She states that she saw someone "searching her property over a 7[-]foot fence" and could "see movement and someone using a flashlight in her backyard." (Second Am. Compl. [#27], ¶ 67.) She saw the flashlight "shining through the windows to her home" and "throughout her entire backyard and back porch." (Second Am. Compl. [#27], ¶ 67.) He allegedly caused "[v]isible damage" by "plac[ing] his body weight on the fence to hoist himself over to the area of this private property." (Second Am. Compl. [#27], ¶ 65; *id.* at 18.) Ms. Bays "called out to make whoever was in her backyard known," and Defendant Schaffer identified himself. (Second Am. Compl. [#27], ¶ 68.)

In September 2022, Ms. Bays's attorney filed a writ of habeas corpus and had her bond conditions lifted. (Second Am. Compl. [#27], ¶ 75.) According to Ms. Bays, the case against her was immediately dismissed; no charges were ever formally filed against her; and she was never indicted. (Second Am. Compl. [#27], ¶ 75.) Around that same time, due to her "living in constant fear" of the NBPD, she chose to sell her home and move out of Texas. (Second Am. Compl. [#27], ¶ 73; *id.* at 12.)

Ms. Bays filed the instant case on December 28, 2023. She was subsequently indicted by a grand jury in May 2024 for forgery under Texas Penal Code § 32.31(e).[2] According to her, the indictment is a malicious prosecution in retaliation for bringing this lawsuit. (Second Am. Compl. [#27], at 12.) She pleads that Defendant Diaz retaliated by "coerc[ing] the district attorney[']s office to re-file the charges" against her that she claims were the "same charges that were dismissed by the court" in September 2022. (Second Am. Compl. [#27], at 11.)

## IV.    <u>Analysis</u>

Defendants seek dismissal of Plaintiff's Second Amended Complaint [#27] based on the following theories: (1) Plaintiff's claims against Defendant New Braunfels Police Department must fail because it lacks jural existence; (2) Plaintiff's claims arising out of her arrests on November 14, 2021 and December 23, 2021, are time-barred by the two-year statute of limitations; (3) Plaintiff's claims against the individual officers that are not time-barred are barred by qualified immunity; and (4) Plaintiff's claims against Defendant City of New Braunfels fail because Plaintiff has not sufficiently alleged municipal liability.

After considering all of the arguments of the parties, the pleadings, and the governing law, the undersigned recommends that Defendant NBPD be dismissed due to its lack of jural existence; Plaintiff's claims arising out of events prior to December 28, 2021, be dismissed as untimely; Plaintiff's remaining claims against all individual officers be dismissed on the basis of qualified immunity; and Plaintiff's remaining claims against the City be dismissed for failure to sufficiently allege municipal liability.

---

[2] *State v. Bays*, No. 24-1094-CR-C (25th Dist. Ct., Guadalupe County, Tex. May 2, 2024).

**A.**    <u>Plaintiff's Claims Against the New Braunfels Police Department</u>

Defendant New Braunfels Police Department seeks dismissal of Plaintiff's claims on the basis that it has not been granted jural authority to be sued and does not have a separate legal existence from the City of New Braunfels. The capacity to be sued is governed by the law of the state where the court is located. Fed. R. Civ. P. 17(b)(3). Therefore, in order to sue a city department in this court, that department "must enjoy a separate legal existence," meaning that it must be a "separate and distinct corporate entity" under Texas law. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (internal citations omitted). If the city itself has not granted the agency at issue jural authority, it may not sue or be sued. *Id.*

The City of New Braunfels is a home rule city. City of New Braunfels Charter, art. II, § 2.01 ("The City shall have all powers possible for a home rule city to have under the constitution and laws of the State of Texas as fully and completely as though they were specifically enumerated in this charter."). The City therefore has the "authority to organize a police force" and "is allowed to designate whether one of its own subdivisions can be sued as an independent entity." *Darby*, 939 F.2d at 313; Tex. Local Gov't Code § 341.003. The City's charter does not grant its Police Department the power to sue or be sued. NBPD is therefore not a separate legal entity from the City, and all claims against it should be dismissed. *See Crull v. City of New Braunfels*, 267 F. App'x 338, 341–42 (5th Cir. 2008) (holding that the district court did not err in dismissing the claims against the New Braunfels Police Department because it does not have jural authority).

**B.**    <u>Plaintiff's Claims Arising Out of Events Prior to December 28, 2021</u>

Ms. Bays's allegations concern events that occurred as early as October 27, 2021, and include two arrests on November 11, 2021, and December 23, 2021. (Second Am. Compl. [#27],

¶¶ 1, 15, 25, 33, 38.)[3] She alleges that her first arrest involved an unlawful traffic stop by Defendant Hawk, an unlawful search of her car by two Defendant John Does, and an unlawful detention, all in violation of the Fourth Amendment. (Second Am. Compl. [#27], ¶¶ 15, 20–21.) She further alleges that, while in custody, her Fifth Amendment rights were violated when the police continued to question her despite invoking her right to remain silent; her Sixth Amendment right to counsel was violated; her Fourteenth Amendment right to due process was violated due to insufficient medical care; and her rights under the Americans with Disabilities Act ("ADA") were violated. (Second Am. Compl. [#27], ¶¶ 25, 28–31.)

As to Ms. Bays's second arrest, which occurred on December 23, 2021, she pleads that Defendant Diaz "initiated a false arrest" in violation of her Fourth Amendment rights by committing perjury in his affidavit submitted to the Guadalupe County judge. (Second Am. Compl. [#27], ¶¶ 33–34.) She claims that as she was being taken into custody, the officers denied her multiple requests to bring her necessary medications with her. (Second Am. Compl. [#27], ¶¶ 39–40.) Ms. Bays then alleges that during her overnight detainment, she experienced a medical emergency but was repeatedly denied medical care and denied access to her medications. (Second Am. Compl. [#27], ¶¶ 50, 53–56.)

Based on the above allegations, Ms. Bays brings claims for constitutional violations pursuant to 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act. Defendants argue that all of these claims are barred by the statute of limitations. Dismissal on the basis of a statute of limitations is an affirmative defense on which Defendants have the burden of proof. *See Frame v. City of Arlington*, 657 F.3d 215, 239 (5th Cir. 2011) (citing *FTC v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317, 320 (5th Cir. 2004); *In re Hinsley*, 201 F.3d 638, 644–45 (5th

---

[3] As noted in footnote 1, *supra*, the undersigned has attempted to fix obvious typos related to the dates in Ms. Bays's allegations.

Cir. 2000); Fed. R. Civ. P. 8(c)). A motion to dismiss for failure to state a claim under Rule 12(b)(6) is a valid means to raise a statute of limitations defense only if the defense clearly appears based on the facts as alleged on the face of the pleadings. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

### i.    <u>Section 1983 Claims</u>

The statute of limitations for causes of action brought under § 1983 in Texas federal courts is two years, and it generally begins to run "the moment the plaintiff becomes aware that [she] has suffered an injury or has sufficient information to know that she has been injured." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (quoting *Russell v. Bd. of Trustees*, 968 F.2d 489, 493 (5th Cir. 1992)). The plaintiff "need not know that she has a legal cause of action; she need only know the facts that would ultimately support a claim." *Id.* (citing *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983)).

With regards to her arrest on November 11, 2021, and the events that occurred during her related detention that lasted until December 4, 2021, Ms. Bays knew of the facts supporting her Fourth Amendment, Fifth Amendment, Sixth Amendment, and Fourteenth Amendment claims on the same days the alleged violations occurred. Because all of these events took place between November 11, 2021 and December 4, 2021—more than two years before she filed this suit on December 28, 2023—these claims should be dismissed as time-barred.[4]

The same conclusion should be reached for her Fourth Amendment and Fourteenth Amendment claims arising out of her second arrest, which took place on December 23, 2021.

---

[4] The undersigned further notes that, as the alleged failure to provide medical treatment occurred in a Guadulupe County jail, none of the Defendants to the instant suit appear to be a proper defendant for her Fourteenth Amendment claim related to inadequate medical treatment. Plaintiff has a separate case pending in this Court against the Guadulupe County Sheriff's Department, *Bays v. Guadulupe County Sheriff's Department*, 5:23-cv-1519-FB-RBF.

The "statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace v. Kato*, 549 U.S. 384, 397 (2007). A warrant was issued for Ms. Bays's arrest, signed by a Guadalupe County Justice of the Peace, on December 21, 2021. (Arrest Warrant [#29-1], at 2–3.) She was then taken into custody on December 23, 2021; this is when the statute of limitations for her false arrest claim began to run. Her false arrest claim is therefore time-barred, because she filed this suit more than two years later. Similarly, her Fourteenth Amendment claim related to Defendants' alleged failure to provide adequate medical care accrued at the latest on December 24, 2021, the date of her release from detention. Thus, this claim is also time-barred by the two-year statute of limitations.

Ms. Bays argues generally in her response that her claims are not time-barred, as she mailed her complaint via certified mail prior to the statute of limitations, and the complaint's filing was delayed due to the U.S. Postal Service and courts being closed during the holiday season. Placing a complaint in the mail constitutes "filing" the complaint for incarcerated, pro se filers. *Blimline v. Thirty Unknown Emps. of the Sec. and Exch. Comm'n*, 757 F. App'x 299, 303 (5th Cir. 2018) (per curiam); *Cooper v. Brookshire*, 70 F.3d 377, 379–81 (5th Cir. 1995). But for all other non-electronic filers, under the Federal Rules of Civil Procedure, a document is deemed filed by **delivering** it to the court clerk. Fed. R. Civ. P. 5(d). What matters is date it was first "in the custody of the clerk," not the date the clerk actually files the document. *Hernandez v. Aldridge*, 902 F.2d 386, 388 (5th Cir. 1990). The date the complaint is mailed is irrelevant to this analysis.

Ms. Bays also argues that the statute of limitations "could not begin to run until the plaintiff was fully acquitted because up until that point she was[] 'detained' under the Fourth Amendment while out on bond." (Second Am. Compl. [#27], at 11.) This is incorrect. In Texas, even *incarceration* does not toll the statute of limitations.[5] *Pete v. Metcalfe*, 8 F.3d 214, 217–18 (5th Cir. 1993); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 16.001 (West) (listing what conditions qualify as a legal disability and therefore toll statutes of limitations). Being on bond therefore does not toll the statute of limitations.

Lastly, Ms. Bays argues that the statute of limitations "will be tolled until the last date on which a wrongful act is committed" and cites to a case from an intermediate appellate court in New York. *Henry v. Bank of Am.*, 147 A.D.3d 599, 601 (N.Y. App. Div. 2017). This case addresses the "continuous wrong doctrine" recognized by New York courts; it does not address how Texas state or federal courts apply the doctrine. *See Neufeld v. Neufeld*, 910 F. Supp. 977, 982 (S.D.N.Y. 1996) (explaining that this principle is "under New York law"). While the Fifth Circuit has recognized the continuing violation doctrine, it is "wary to use the continuing violation doctrine to save claims" except in certain employment discrimination contexts. *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 866 n.27 (5th Cir. 1993).

And even if the continuing violation doctrine were more broadly applied in the Fifth Circuit, this case is not a good fit. The continuing violation doctrine applies when a wrongful act "manifested itself over time, rather than in a series of discrete acts" or is "repeated conduct." *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Though it is true that some acts alleged in the Second Amended

---

[5] Texas's law on tolling provisions is relevant because the Supreme Court has held that, in addition to § 1983 claims borrowing a state's statute of limitations, these claims also borrow that state's tolling provisions for imprisonment. *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993) (citing *Hardin v. Straub*, 490 U.S. 536, 543 (1989)).

Complaint took place within the past two years, those were **discrete** acts—an alleged search of her home and alleged malicious prosecution. Those types of alleged acts are not *repeated* conduct, even if Plaintiff alleges that they are *related*.

Moreover, while courts may in rare circumstances equitably toll a statute of limitations, this doctrine should not apply in this case. Because Texas's statute of limitations applies, its equitable tolling principles also govern. *Myers v. Nash*, 464 F. App'x 348, 349 (5th Cir. 2012) (citing *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998); *see also Bd. of Regents of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 484–85 (1980). Texas courts "sparingly apply equitable tolling" and will not use the doctrine when litigants require tolling to "avoid the consequences of their own negligence." *Myers*, 464 F. App'x at 349 (quoting *Hand v. Stevens Transport, Inc.,* 83 S.W.3d 286, 293 (Tex. App.—Dallas 2002, no pet.)). For the doctrine to apply, a plaintiff must "exercise diligence in the prosecution of [her] cause of action" and "plead and prove that [she] exercised due care to prevent the running of the statute." *Palmer v. Enserch Corp.*, 728 S.W.2d 431, 434 (Tex. App.—Austin 1987, writ ref'd n.r.e.) (citing *Irwin v. Prestressed Structures, Inc.*, 442 S.W.2d 406 (Tex. App.—Amarillo 1969, writ ref'd n.r.e.)). Moreover, the Fifth Circuit has stated that it "see[s] no basis for holding[] that the Texas tolling laws are inconsistent with policies underlying § 1983." *Rotella*, 144 F.3d at 897.

Ms. Bays mailed her original complaint on December 20, 2023, a mere few days before her statute of limitations for claims arising out of her second arrest and detention was set to expire, and the complaint was not received by the Court until after the statute of limitations had run. (Copy of Envelope [#1-3].) Ms. Bays has not pleaded any reason for why she could not have mailed her complaint earlier. It would therefore be inappropriate for this Court to equitably toll the statute of limitations in this case.

To summarize, the Section 1983 claims asserted by Ms. Bays based on events that occurred prior to December 28, 2021, are time barred. The Court should therefore dismiss these claims.

### ii. Americans with Disabilities Act Claims

The Court should also dismiss as time-barred the ADA claim asserted by Ms. Bays. In her complaint, she alleges that her rights under the ADA were violated during both of her periods of detention. During her November 2021 detention, she states that she was "in medical distress" with "evidence of [a] stroke or heart attack," but she did not receive treatment. (Second Am. Compl. [#27], ¶ 25.) She also states that she was shackled, which caused severe pain and suffering due to her preexisting spinal injuries. (Second Am. Compl. [#27], ¶ 28.) During her second period of detention, which began on December 23, 2021, Ms. Bays claims that she was not given her necessary meditation and suffered a stroke and/or heart attack, which she received treatment for after being released on bond. (Second Am. Compl. [#27], ¶¶ 51–58.)

As with § 1983 claims, Texas federal courts apply Texas's two-year statute of limitations to claims under Title II of the ADA. *Brockman v. Tex. Dep't of Criminal Justice*, 397 F. App'x 18, 21–22 (5th Cir. 2010); *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011). Also like § 1983 claims, a cause of action under Title II accrues when the disabled person knew or should have known she was being denied the benefits by a public entity or discriminated against by a public entity. *Frame*, 657 F.3d at 238. Thus, for the same reasons discussed above regarding Ms. Bays's § 1983 claims, her ADA claims arising out of her periods of detention are time-barred, equitable tolling does not apply, and the claims should be dismissed.

### C.    Plaintiff's Claims Against the Individual Officers

If the District Court adopts the undersigned's recommendation to dismiss all claims arising out of events prior to December 28, 2021, then only the claims against individual officers remain: (1) the malicious prosecution charge against Defendant Diaz in his individual capacity; (2) the Fourth Amendment illegal search charge against Defendant Schaffer in his individual capacity; and (3) the claims against former Police Chief Lane and Assistant Police Chief Vargas, which appear to be claims against them in their official capacities.[6]

The officers sued in their individual capacity assert qualified immunity. To overcome an officer's qualified-immunity defense, Ms. Bays must allege facts showing that (1) the officer violated a constitutional right and (2) that the right was clearly established at the time. *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). To be clearly established, the contours of the right must be sufficiently clear such that "every 'reasonable official would [have understood] that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

### i.    Malicious Prosecution Charge Against Defendant Diaz

Ms. Bays alleges that, after she was charged with felony forgery in December 2021 and released on bond, she attended a hearing in September 2022 at which her case was "immediately dismissed," "[n]o charges were ever formally filed, and the plaintiff was never indicted."[7]

---

[6] Plaintiff does not make any specific claims against Police Chief Lane and Assistant Police Chief Vargas other than them being the relevant policymakers. The undersigned will therefore construe her claims against them as being in their official capacity. Because claims against officers in their official capacities are considered equivalent to claims against the entity the officer works for, the claims against Defendants Lane and Vargas are addressed in the section analyzing Ms. Bays's claims against the City. *See* Section IV(D), *infra*.

[7] Defendants claim that the forgery charges were in fact "never dismissed out of Guadalupe County" and that the "case was filed with the Guadalupe County District Attorney's

(Second Am. Compl. [#27], ¶ 75.) She filed the instant lawsuit in December 2023. In May 2024, she was indicted for forgery, Texas Penal Code § 32.31(e), by a Guadalupe County Grand Jury. *State v. Bays*, No. 24-1094-CR-C (25th Dist. Ct., Guadalupe County, Tex. May 2, 2024). Ms. Bays pleads that Defendant Diaz had "coerced the district attorney[']s office to re-file the charges against" her and that he "wrongfully initiat[ed] criminal proceedings" on these charges. (Second Am. Compl. [#27], at 11, 13.)

Litigants may bring a Fourth Amendment malicious prosecution claim under § 1983. *Thompson v. Clark*, 596 U.S. 36, 42–44 (2022). Under Fifth Circuit precedent, the elements of such a claim are: "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages." *Espinal v. City of Houston*, 96 F.4th 741, 748 (5th Cir. 2024) (quoting *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023)). The independent intermediary doctrine, however, may protect defendants from liability; this doctrine applies "'if facts supporting an arrest are placed before an independent intermediary such as a magistrate *or grand jury*, the intermediary's decision breaks the chain of causation' for the Fourth Amendment violation." *Hughes v. Garcia*, 100 F.4th 611, 619 (5th Cir. 2024) (emphasis added) (quoting *Jennings v. Patton*, 644 F.3d 297, 300–01 (5th Cir. 2011)); *see also Trevino v. Iden*, 79 F.4th 524, 531 n.4 (5th Cir. 2023) (noting that the independent intermediary rule applies to malicious prosecution claims). On the other hand, the independent intermediary

---

Office," which resulted in her May 2024 indictment. (Mot. to Dismiss [#29], at 2.) Based on Guadulupe County civil court records, which the undersigned may take judicial notice of as public records, it appears the dismissal Ms. Bays is referring to is for a **civil** case in the 2nd 25th Judicial District of Texas, No. 22-1884-CV-A, in which she filed a writ of habeas corpus for a bond reduction; this case is marked as dismissed.

doctrine will not prevent liability if the "taint" exception applies, which at the motion-to-dismiss stage requires that the complaint plausibly alleged the defendant knowingly withheld material information from the intermediary and alleged other facts supporting the inference. *Trevino*, 79 F.4th at 532 (quoting *McLin v. Ard*, 866 F.3d 682, 690 (5th Cir. 2017)).

Ms. Bays's malicious prosecution claim should be dismissed. For one, the criminal case against her has not been terminated in her favor—it has not been terminated at all, as it is ongoing.[8] *See Thompson*, 596 U.S. at 44. Moreover, the independent intermediary doctrine prevents liability for Defendants, as a grand jury indicted Ms. Bays. Though Ms. Bays's Second Amended Complaint pleads that Defendant Diaz "demanded" that the forgery charges be "re-filed" in retaliation for filing this lawsuit, she makes no allegations whatsoever that the evidence presented to the grand jury was "tainted" by Defendant Diaz or any other Defendant. *See Trevino*, 79 F.4th at 532. As such, Ms. Bays has not sufficiently pleaded that Defendant Diaz initiated a malicious prosecution in violation of her constitutional rights, resulting in her not overcoming Defendant Diaz's qualified-immunity defense. *See Templeton*, 28 F.4th at 621 (quoting *al-Kidd*, 563 U.S. at 735). Defendants' Motion to Dismiss the malicious prosecution charge against Defendant Diaz should therefore be granted.

### ii.    Fourth Amendment Illegal Search Charge Against Defendant Schaffer

Ms. Bays alleges that Defendant Schaffer violated her Fourth Amendment rights by conducting an illegal search of her backyard. Defendant Schaffer generally asserts qualified immunity under both prongs of the qualified immunity analysis, but he does not make any specific arguments as to why his alleged actions were constitutional or were not objectively unreasonable. The Court should grant the motion to dismiss this claim.

---

[8] *State v. Bays*, No. 24-1094-CR-C (25th Dist. Ct., Guadalupe County, Tex. May 2, 2024).

The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV. A "search" occurs for Fourth Amendment purposes "when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (citations omitted). The "curtilage" of a home—i.e., "the area 'immediately surrounding and associated with the home'"—is treated as part of the home for Fourth Amendment purposes. *Florida. v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)).

"A home and its curtilage," however, "are not necessarily protected from inspection that involves no physical invasion." *Florida v. Riley*, 488 U.S. 445, 449 (1989). Police are permitted to "see what may be seen 'from a public vantage point where [they have] a right to be.'" *Id.* (quoting *California v. Ciraolo*, 476 U.S. 207, 213 (1986)). That an area "is within the curtilage does not itself bar all police observation," even if an individual "has taken measures to restrict some views of his activities." *Ciraolo*, 476 U.S. at 213. For example, the Supreme Court has held that police viewing an individual's backyard from a helicopter to investigate expected criminal activity does not violate the Fourth Amendment. *Id.* at 213–14. It has also noted that—even though tall fences may "manifest[] a subjective expectation of privacy"—such a fence "might not shield [the backyard] from the eyes of a citizen or a policeman perched on top of a truck or a two-level bus." *Id.* at 211–12. Additionally, the Supreme Court has held that where there is no reasonable expectation of privacy, the use of a flashlight does not constitute a search. *Texas v. Brown*, 460 U.S. 730, 739–40 (1983).

By contrast, when "officers have *physically invaded* this protected area, either to seize evidence or to obtain a view of illegal activities, [the Fifth Circuit has] readily condemned such

an invasion as violative of the Fourth Amendment." *Fixel v. Wainwright*, 492 F.2d 480, 483 (5th Cir. 1974) (emphasis added). Similarly, the Supreme Court has asserted that the Fourth Amendment "would be of little practical value if the State's agents could *stand in* a home's . . . side garden and trawl for evidence with impunity." *Jardines*, 569 U.S. at 6 (emphasis added). There is a constitutional difference, therefore, in merely observing a protected space from the outside as opposed to physically entering that space.

As explained above, to overcome Defendant Schaffer's qualified immunity defense, Ms. Bays must allege facts showing that (1) he violated her Fourth Amendment rights and (2) that the right was clearly established at the time. *Templeton*, 28 F.4th at 621 (quoting *al-Kidd*, 563 U.S. at 735). To be clearly established, the contours of the right must be sufficiently clear such that "every 'reasonable official would [have understood] that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 741 (quoting *Anderson*, 475 U.S. at 341).

Ms. Bays alleges that Defendant Schaffer arrived at her home in the middle of the night in April 2022 after her neighbors accused her of vandalism. (Second Am. Compl. [#27], ¶ 65.) Ms. Bays pleads that he "search[ed] her property over a 7[-]foot fence" by "hoisting" himself up on the fence. (Second Am. Compl. [#27], ¶ 67; at 18.) He then allegedly searched for evidence of vandalism by shining his "flashlight not only . . . through her windows to her home, but throughout her entire backyard and back porch." (Second Am. Compl. [#27], ¶ 67.) According to her, she "called out to make whoever was in her backyard known," and Defendant Schaffer responded "that he was searching [her] property on a criminal complaint." (Second Am. Compl. [#27], ¶ 68.)

Defendant Schaffer never physically entered Ms. Bays's home nor its curtilage. She "does not allege that the officer[] [was] looking from a vantage point where [he] did not have the

right to be." *Manseau v. City of Miramar*, 395 F. App'x. 642, 645 (11th Cir. 2010) (per curiam). Though her seven-foot-tall fence manifests a certain expectation of privacy, a backyard is "clearly visible" from certain "public vantage point[s]." *Ciraolo*, 476 U.S. at 213. For example, a neighbor on a ladder would likely easily be able to see into her backyard and windows. And what an individual "knowingly exposes to the public, even in [her] own home . . . is not a subject of Fourth Amendment protection." *Id.* (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)). That Defendant Schaffer used a flashlight does not change the Fourth Amendment analysis. *See Brown*, 460 U.S. at 739–40.

Moreover, even if Defendant Schaffer's conduct *did* violate the Fourth Amendment, a right to be free from officers peering over one's fence is not a clearly established right. *See Templeton*, 28 F.4th at 621. Considering it has been held constitutional to look into a fenced backyard using a helicopter, "every" reasonable officer would not know that peering over a fence violates the Fourth Amendment. *See al-Kidd*, 563 U.S. at 741. As a result, Ms. Bays has failed to overcome the defense of qualified immunity on both prongs. The Court should therefore grant Officer Schaffer's motion to dismiss the Fourth Amendment claim against him.

**D.    <u>Plaintiff's Claims Against the City of New Braunfels, Chief Lane, and Assistant Chief Vargas</u>**

Ms. Bays includes the City of New Braunfels as a defendant. Additionally, the undersigned has construed her complaint as suing Chief Lane and Assistant Chief Vargas in their official capacities, due to the allegations surrounding them solely involving their purported roles as policymakers. The claims against Chief Lane and Assistant Chief Vargas are duplicative, as an official-capacity suit against them is the same as a suit against the City itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)).

For her claims against the City to survive, she must allege facts to establish municipal liability under *Monell*. Only an official policy or custom of the City can expose it to liability for a violation of constitutional rights; *respondeat superior* liability for the acts of city employees is not available. *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citations omitted). Municipal liability under 42 U.S.C. § 1983 therefore requires proof of (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978). Plaintiff must plead an official policy or custom "so persistent and widespread as to practically have the force of law," and thus must allege specific facts to support the existence of such a custom. *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 285 (5th Cir. 2020) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)). It is not sufficient to make conclusory allegations or solely describe the incident that gave rise to the plaintiff's purported injury.[9] *Armstrong v. Ashley*, 60 F.4th 262, 276–77 (5th Cir. 2023); *Peña*, 879 F.3d at 622.

It is not entirely clear what causes of action Ms. Bays is bringing against the City. To the extent she is bringing claims under the Fourth Amendment, Fourteenth Amendment claim, and Americans with Disabilities Act for events that occurred prior to December 28, 2021—the allegedly unlawful traffic stop, unlawful search of her car, false arrest, inadequate medical care, and disability discrimination—these claims are time-barred for the same reasons explained in

---

[9] Ms. Bays cites to *City of Canton v. Harris*, 489 U.S. 378 (1989), for the proposition that municipal liability can be established through evidence of a single violation of federal rights. The Supreme Court has since instructed that *Canton*'s "hypothesized single-incident liability" theory will rarely apply. *Connick v. Thompson*, 563 U.S. 51, 63–64 (2011). In the Fifth Circuit, single violations may only establish deliberate indifference "in narrow and extreme circumstances." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 627 (5th Cir. 2018). There are no such extreme circumstances in this case.

Section IV(B), *supra*.[10] To the extent she is bringing a Fourth Amendment malicious prosecution claim against the City, it fails as a matter of law for the same reasons explained in Section IV(C)(i), *supra*.

The sole remaining claim Ms. Bays could bring against the City is a Fourth Amendment claim for the allegedly unlawful search of her backyard by Defendant Schaffer. It should be dismissed for failure to plausibly allege municipal liability. Ms. Bays's pleadings do allege that either the Chief of Police, Keith Lane, or the Assistant Chief of Police, Joe Vargas, were the final policymaking authority. (Second Am. Compl. [#27], at 17.) The Fifth Circuit has "previously found that Texas police chiefs are final policymakers for their municipalities." *Garza v. City of Donna*, 922 F.3d 626, 637 (5th Cir. 2019). Thus, construing her complaint liberally, Ms. Bays has met the first element necessary for *Monell* liability.

Ms. Bays does not, however, sufficiently plead that the final policymaker established or allowed a policy or custom that was the moving force behind the alleged violation of her Fourth Amendment rights. Her complaint does not allege facts supporting that the City had a policy, practice, or custom of conducting warrantless searches of residents' homes; rather, her allegations only concern the single incident involving Defendant Schaffer.[11] *See Peña*, 879 F.3d at 622. She vaguely pleads that the City has a "policy, practice, custom, and/or usage of

---

[10] Moreover, as noted in footnote 4, *supra*, the City of New Braunfels does not appear to be the correct defendant for claims related to the allegations occurring in Guadalupe County Detention Center.

[11] Ms. Bays does allege that the City's "final policy-making authority" had "constructive notice" of a policy, practice, or custom of "profiling by NBPD officers" related to unlawful traffic stops. (Second Am. Compl. [#27], ¶ 68.) Her response [#30] to the motion to dismiss similarly claims that NBPD has a "well-known pattern of misconduct" of "specifically targeting minorities"; she refers to another case brought against the City for an unlawful traffic stop. (Pl. Resp. [#30], at 15.) This allegation is irrelevant to alleging a policy or practice of unlawfully searching residents' homes.

intentionally disregarding the rights of individuals such as Ms[.] Bays regarding violations of color of law, misconduct, hostility, and harassment toward free citizens in New Braunfels, Texas." (Second Am. Compl. [#27], ¶ 86.) This ambiguous and conclusory allegation is not sufficient to survive a motion to dismiss. *See Armstrong*, 60 F.4th at 276–77. Her Fourth Amendment claim against the City therefore should fail as a matter of law and be dismissed, meaning the City's motion to dismiss should be granted on all claims.

### V.    Conclusion and Recommendation

Having considered Defendants' motion and the response thereto, the pleadings, and the governing law, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) [#29] be **GRANTED**.

### VI.    Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party

from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 3rd day of February, 2025.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE